Please the court. My name is Rachel Headley and I'm appearing today on behalf of the appellant Panera, LLC. I'd like to focus my argument this morning on the answer to the following question. Why are we here? Why are we here? And what relief is Panera seeking? Panera filed this lawsuit in the Missouri District Court. Act III moved to dismiss and launched a Delaware forum. The district court granted the motion in favor of a Delaware forum. Panera then consented to jurisdiction and venue in the Delaware forum where Panera obtained a temporary restraining order and a preliminary injunction and an order that the former employees had spoliated evidence. Which brings me back to the question, why are we here? What's the current status of that litigation? The parties are still litigating. So there were various reasons why the litigation was put down. I would use that phrasing. There were some attempts to resolve the litigation. And then, of course, the pandemic came on, which caused some delays for everyone, and particularly in the restaurant industry. But the litigation is ongoing. The temporary restraining order was entered, the preliminary injunction was entered, and the parties are now this week for later in the summer. What's the difference in terms of the issues in that case than what would be the merits in this case? To answer that question, which comes back to my question of why we're here, is that the fundamental claims, the substantive claims that Panera brought here are the same claims that Panera brought there. Well, then why isn't your seeking that same relief in a different form? Well, on its way to conclusion, not a waiver, or at least rendering of the case in Missouri, moved. So the reason that our argument is that the reason we're still here asking for relief, and specifically asking this court to vacate the district court's order, is because here Act 3 has argued that this appeal is moot. But that is not the position Act 3 has taken in Delaware. In Delaware, Act 3 has taken the position that the district court's order adjudicated the substantive merits of the claims, and is holding this order over the Delaware court, and saying that the Delaware court is not free to interpret the agreements as it sees fit. Can we alleviate that, though? If the case is indeed moot, and it appears that what you want is an advisory opinion, just to get rid of this old case, doesn't Panera's problem go away if we do what we normally do and vacate the lower court decision? So case is moot, Panera didn't have a chance to appeal it, we vacate the lower court decision. And that is the relief we're seeking, and we believe that is the right result. But Act 3 does not want the district court's opinion vacated. Although Act 3 is arguing that it's moot, Act 3 doesn't want it vacated. And I would like to just comment that in the briefing, in Act 3's briefing before this court, and it's on page 20, Act 3 argues that Panera wants this court to advise the Delaware court on how to interpret the settlement agreement. And again on page 28 in Act 3's brief, whether a court should ultimately conclude that the agreement's substantive terms are a major or minor hurdle, whether they are met in a particular case are not questions before this court now. I could go on. But it is not Panera who is asking this court to make those decisions. Panera is simply asking this court to free the Delaware court to make those decisions. That is the court that is presiding over this litigation. That is the court that Act 3 chose. And Panera went there- Council, would you agree though that, to get back to the Chief's question, but for these other issues, right? That in your view, Act 3 is asking them to give some effect to this prior decision. The case is otherwise moot. Would you at least agree with that? That the only live controversy, so to speak, is how this opinion's being used in Delaware. I would agree. If the court would agree with Panera's position that the only issue decided was venue, venue is no longer at issue. We do not agree that the district court was correct about venue, but we're not asking this court to review that because that that vacator is the appropriate remedy. And towards that end, I know with my limited time, I do want to just briefly address the timing, which I think is well set out in the briefs. And to the extent that Act 3 has argued Panera could have appealed or taken some other action, this was a very exigent circumstances. The litigation here in the district court was essentially seven days from the day that Panera filed the TRO and the complaint until the day that the district court dismissed it was seven days. So there was not a lot of time. This was a proceeding that was on an accelerated timeline for a temporary restraining order. And the following day after the district court dismissed this is the day these employees were intended to start work, March 1st. So Panera had no choice in the reality of the circumstances but to go to Delaware to get to ask for a TRO, which it got, to ask for a preliminary injunction, which it got. And by the reaffirming the urgency and exigency of the circumstances, the Delaware court found that each one of these employees foliated evidence, took Panera's trade secrets and destroyed evidence on the way out the door. And so to the extent there's any equities to the situation and Act 3 has argued that the equities favor Act 3, we respectfully submit that the record very clearly establishes that the equities favor Panera. I also want to point out to the issue about what is going on in Delaware, is that the Delaware court has been very focused on the district court's order. And in particular, on the one sentence that has created so much discussion, which is at the bottom of page five, where the district court says, defendants argue that the settlement has modified or superseded the non-competes, such that the non-competes are no longer enforceable on their own terms. For the purpose of this action, defendants are correct. In Delaware, there was a hearing on April 23rd of 2019, and that's in the additional materials that we submitted, the transcript of that proceeding, arguing on Panera's motion to dismiss the Delaware action. Panera withdrew the portions of its motion to dismiss based on lack of jurisdiction and venue, but still had an argument that Act 3 lacked standing to seek a declaratory judgment to validate those non-competes. And during that hearing, Act 3's counsel put this language up in front of the Delaware court, highlighting all but the words for purpose of this action. And the Delaware court was very focused on those words and wanted to understand what does that mean. And we submit that what that means is that the district court adjudicated the question of venue, and that's it. But again, that is not the position that Act 3 has taken. And that is not position that Act 3 took in Delaware, where it insisted that it meant more than that. As to the equities and the basis for Panera's request for vacator, this was a calculated corporate raid. It was directed from the highest levels. For example, Act 3 has said that Panera acted wrongly by not negotiating with these employees. The employees were instructed not to negotiate. And that is a finding the Delaware court made preliminarily. Act 3 insists that Panera had contractually agreed to litigate in Delaware, and yet cannot explain why was it that these individual employees executed consents to jurisdiction on February 13th, the very same day that Act 3 filed the litigation in Delaware. If Panera had contractually agreed to litigate in Delaware, why would those consents to jurisdiction have been necessary? The answer is simple. They wouldn't have. And Act 3 coordinated with those former employees to support the argument they knew they were going to make when they raced to the courthouse to go to Delaware to file the action first. So what we're asking is to free the Delaware court to interpret the agreements as that court sees fit. What Act 3 is arguing in Delaware, to the court in Delaware, is that the court is hamstrung, that the court must accept that on this seven-day record, where the district court was faced with ultimately a forum selection clause issue, and even in the record here, at the hearing on February 27th, when the district court asked Act 3's counsel, what are you here for? What are the issues? In the record at Joint Appendix 953 on page 10 of that transcript, Act 3 said, Your Honor, we request the case be dismissed. And if it's not dismissed at a minimum, it be stayed, so the Delaware court can interpret the operative agreement. On page 11 of that— Ms. Hadley, why didn't Panera contest venue in Delaware? When Panera got to Delaware and had filed the motion to dismiss, the Delaware court said, if you're contesting jurisdiction here, I can't enter a TRO. Then what's going to happen? And Panera would be left without a forum, with nowhere to go. The district court in Missouri, where it had contractually agreed with the former employees to litigate, had already said go to Delaware. There was a forum in Delaware that Act 3 chose. And again, on the exigency of the circumstances— Wouldn't you have been able to come back to Missouri and say Delaware says it's not the right place? You are. At that point, though, the employees would already have started work. They were already destroying evidence. They were already taking the trade secrets with them. And the nature of the proceedings was such that it was an emergency, and there was a forum available. And on that basis, the practical reality is that Panera had no other choice but to go to the Delaware court, the court that Act 3 chose, and ask for relief, which relief was granted. And so, your honors, I see that I'm out of time, what I've left for rebuttal, but we would respectfully submit that the equities here clearly favor Panera. Act 3 says the case is moot, and the court should vacate the district court's order. Thank you. Mr. Buckey? Thank you, your honor. May it please the court. I'd like to emphasize two distinct aspects of our argument. They seem related, but they're different. One is waiver, and one is mootness. And as to both issues, Panera has explicitly stated that it waived the arguments that it's presenting here, and it has explicitly stated that the arguments here are moot. I'd like to begin with waiver, because under the waiver doctrine, there is no issue of vacater. If Panera waived the arguments that are here on appeal, then the waiver applies. There's no question of vacater. Vacater is a mootness doctrine, not a waiver doctrine. And as to waiver, which the principle I think is undisputed, it's the intentional relinquishment of a known right. Panera said to the Delaware court, and this is described at pages six to seven of our brief, that a party to a contract with a forum selection clause can waive the right to enforce it, and then said, quote, Panera waived its right to enforce the forum selection cause in this case. That is what Panera wrote to the court in Delaware, and that's cited in our papers. And so, your honor, there is no reasonable dispute about waiver. In a typical waiver case, the parties are arguing about whether conduct constitutes a waiver. And here, of course, that is also true. Panera filed its claim in Delaware, and that conduct constitutes waiver. But beyond that, Panera conceded waiver to the Delaware court, and it did so for a very specific reason, which Ms. Headley alluded to, which is, in order to get the relief that Panera was seeking in Delaware, it had to waive the venue objection, and it did so. And that waiver applies here, and it is dispositive. Counsel, why don't we get to waiver? Waiver is a prudential doctrine. Mootness is an Article III doctrine. It gets to whether we can decide the dispute at all. So, mootness would always come before waiver. Now, maybe waiver is relevant as to whether we vacate, but I don't see how we ever get to waiver. Fair enough, your honor. Certainly, the case is moot. It seems that Panera now concedes that. Let me address the mootness question, your honor. This is another instance where we don't have to make inferences. We know because what Panera has already said. What Panera said to the Delaware court, and we quote this on page 20 of our brief, your honor, quote, venue is really now moot because Panera has agreed to stay in Chancery Court and waive its venue objection. And so, the mootness issue is undisputed and should be undisputed, and I think that Ms. Headley just stated that, your honor. Again, as with waiver, there would be pretty obvious conclusion of without that concession, but that was conceded with the exact words being used, your honor. Counsel, so your view of this case is we should conclude its moot but not vacate. Yes, your honor. And why is it that you feel so strongly that there shouldn't be vacature? So, your honor, I think the key case to look at is the U.S. Supreme Court case. I do not think any of this court's decisions are directly on point. The Gretter decision is probably the closest to being on point, but a case cited in the papers, U.S. Bank Corp v. Bonner Mall, a 1994 Supreme Court decision. That decision refutes every single argument that Panera is making before you, and let me speak about that at some length. First of all, it's a unanimous Supreme Court decision, and so this isn't a five to four decision. This is a unanimous Supreme Court decision, and the issue in the case was whether a settlement, a voluntary settlement, which caused the dispute to be moot, warranted vacature of the underlying decision, and the unanimous Supreme Court said no. And one of the key points that the court made refutes the main argument that Ms. Headley is making to you. Ms. Headley is trying to make my clients look bad by referring to all sorts of preliminary findings and partial findings and so on. I'm not going to debate those points. We have different points of view on them, but trying to say, oh, look at all these bad things that they did. Therefore, there's this balance of equities. The U.S. Bank Corp decision says there is no balancing of equities. That's not how it works. There are two issues in a vacatur analysis. One is fault. Two is the public interest. As to fault, it's not a balancing of fault. It's not saying they're the bad guys and we're the good guys. It's not looking at anything at all that the appellee has done or is doing. It is 100% focused on what the appellant did, and what the court said there is the appellant agreed to a settlement, and therefore that's it. It's their fault. The reason this case is moot is because they agreed to something that mooted it. Maybe they had a great reason to settle the case that might have been made business sense, it might have made legal sense, it might have made financial sense, but it was their choice. And the fact that the appellee also agreed to the settlement was completely irrelevant. And what the court said is, quote, it misconceives the emphasis on fault, end quote, to talk at all about what the other side did. It is 100% a question of what the appellant did. But see, counsel, I'm not so sure. I think you're maybe overreading that. I'm very familiar with that case. And I think what it's saying is there was a voluntary settlement. I'm not sure this is like a voluntary settlement, but to the extent you're using that reasoning, here the other side would say, look, the nature of our claims, we're not talking about fault. I'm not talking about whether your clients did something bad. The nature of our claims were exigent. We needed to protect trade secrets. And so to protect trade secrets, once we were sent to Delaware, our only choice to protect those trade secrets was to litigate in Delaware. That seems to me to be a very far cry from the voluntary settlement we had in US court. Yes, Your Honor. So here's what I'd say to that. I think that this court is not an ineffectual place and the process of appeal is not an ineffectual process, which is really what Panera's point is. Panera says when Judge Autry kicked this case to Delaware, Panera made a tactical decision that it would go to Delaware and get an injunction and raises the exigencies with you. The fact is that this court has procedures that would have allowed for Panera to stay here if it chose to do so. It made a tactical decision not to. And so that's the focus on fault. It's what Panera chose to do. It didn't seek a stay from the district court. It didn't seek an emergency appeal to this court. It didn't seek a stay of this court pending the emergency appeal. It didn't seek rid of Mandamus. It didn't do anything. It went to Delaware. And moreover, would any of those things have helped? That's the problem I'm having because I mean, a say, for example, if and I'm not attributing fault, but if you're missing, if your clients are misappropriating trade secrets, as the allegations say, having the case stay does them no good if during the stay, the trade secrets are being misappropriated. So the problem I'm having with your argument is all of those procedures, I don't see them as really helping Panera with the problem that it was alleging. Well, Your Honor, the point is that it could have sought an emergency appeal, and I have no reason to think it wouldn't have gotten a decision as quickly as it got the TRO in Delaware. The TRO in Delaware came, you know, about a week or 10 days after the employees had started work. It's not as though Panera achieved the TRO before they started work. The same thing would have happened here. Moreover, Your Honor, there's also a question of timing. Panera could have said, look, we're going to get a TRO in Delaware. And as soon as we have that in hand, okay, we're now going to come back to Missouri because this is where the case belongs. It's now two years later. In fact, almost exactly two years later, the case is actively being litigated in Delaware. What happened is Panera got the TRO and thought, okay, we're doing pretty good with this judge. Let's keep it here and let's see what else happens. And then what else happened was a preliminary injunction two months later, and then discovery and various motions and various amended complaints and all the things you see in record. So this argument will be a lot more compelling if they came to you at that time and said, look, we had to get this TRO, but now we need to be back where we belong. And Panera did not do that. And that's really the essence of it, Your Honor. If I could just address the issue of the value of the decision. Ms. Headley focused on things that I said to the Delaware court. Well, there are a lot of things Ms. Headley said. And if you go back and read the transcript, we both argued about the meaning of Judge Autry's decision. And we both argued about the procedural aspect of it and whether that procedural aspect drew on a substantive aspect. And of course that's going to happen, Your Honor. Anytime there's a decision in place, the parties are going to argue about what it means. And ultimately we agree with Ms. Headley that it is going to be up to the Delaware court to do so. And the Delaware court said so. And in fact, what the Delaware court said in the hearing that Ms. Headley cited that has both of our arguments to the Chancery court is that while this appeal is pending, it can't do so. And so the impediment to the Delaware court ruling on the arguments that both counsel made to the Delaware court was the pendency of this appeal. What the court said is, look, you can't ask me to make a definitive ruling about what the district court decision means when that decision is under appeal. So the resolution of this case, which we submit should be a mootness dismissal without vacater, is going to allow the Delaware court to do it. Ultimately, nobody disputes that the decision of Judge Autry was a venue decision. I think Ms. Headley unfairly characterizes our argument about that. It obviously was a venue decision. That was the only thing at issue before the court. And it's the only thing the court did. It dismissed the case for lack of venue. There are arguments about the reasoning behind that and the reasoning the court engaged in, which are very useful things. I mean, remember, the other aspect of vacater is the public interest. And the court has traditionally said both the Supreme Court and Bank Corp and this court in multiple decisions has said, look, there's value in having these decisions out there. Panera doesn't like the decision. So it wants to say to the Delaware court, your honor, forget that. Don't look at it. Don't read it. Don't be persuaded by it. It really means nothing. The judge was in a rush. We can have the argument about what the reasoning is, and that's a very useful thing because the court gave consideration to all those issues below and the Delaware court will do what it will with it. But this a decision that doesn't vacate will preserve the ability for that or to do that. Well, that was my next question is what's the consequence to that three for a vacature here? Well, your honor, the consequence is that the decision will be effectively voided. I think it's the consequence for both parties. But the well, I understand that legally, but in terms of why this matters, what's the impact of vacating the decision? That's a case. Your honor, I think that it's a fair question. I think it's a good question for both parties. I think it is the same. However, you look at it, there is no practical consequence. But I mean, that's a question of mootness, I think, not vacater. The mootness question is obvious. This case cannot be remanded. There's no dispute about the mutinous, but I'm asking you as to what's the consequence to your client of a vacature? Well, your honor, there's a collateral estoppel consequence to vacater. And that's what Panera is really attempting to avoid here. I think Miss Hedley would concede that. There are questions of collateral estoppel. And both parties want to make arguments about that. Panera wants it or be none. And we think there should be. It was a well-reasoned decision that Panera chose not to appeal or at least not to pursue seriously on appeal, but instead to litigate in Delaware. And that's the practical consequence. Yeah, I'm being a little unfair. So I'm going to ask this question in sort of the fairest way I can. But on the one hand, I heard you say that this case is all about venue and there's really little to no collateral estoppel value in the venue determination, right? Because you're already in Delaware. I mean, that's law of the case, whatever. But you're saying there's other collateral estoppel effects. So really, I think what you're saying is you like the reasoning of the district court's decision and you'd like to be able to use that for other purposes in Well, Your Honor, I'd say this. I think we can use the reasoning in Delaware either way. The case is not going to be, you know, Soviet style expunged from the books, right? Like we're still going to argue about what it means either way. Panera is going to argue it. We're going to argue it. It's a very complicated, multifaceted dispute where Panera has taken differing positions at different times. And I don't I don't know for sure, Your Honor, what exactly the effect would but I certainly agree that it's a venue decision and therefore it would be the collateral estoppel effect would be as to the issue that was actually in dispute. I'm out of time, Your Honor, but happy to answer any further questions. Thank you, Mr. Buckley. Ms. Headley. Thank you, Your Honors. I know the court is not concerned with this, but just for the record, I want to very briefly state I don't think anyone's getting to waiver, but I absolutely disagree. Panera did not waive its rights on appeal and has repeatedly stated at every step of the way and articulated to the Delaware court the exact reason for pursuing this appeal. So I disagree there's a waiver. On the mootness issue, I want to- Real quickly, counsel, I want to ask you is he gave a quote that was attributed to Panera. Is it an incomplete quote? It sounded like an unconditional waiver. And maybe you're not familiar with it, but he quoted something that I think your co-counsel may have said in Delaware. I think what he was quoting was we said that we waive the right to contest venue in Delaware. That's not the same thing in my mind as waiving the right to pursue this appeal. And so we properly preserve the appeal and we properly explain to the Delaware court exactly why. And it was because of the position that Act 3 is taking and is continuing to take in Delaware. We have submitted the transcript of the hearing that my colleague at the bar is referring to. And I would invite and welcome the court to read the entire transcript because our argument there was the same as our argument here, which is that this was a venue decision. And therefore the only issue is venue. We've consented to venue. So it has no further effect. But what Act 3 has argued is that it was actually litigated and necessarily decided how do you interpret these agreements together? And that is what they're trying to take from this lawsuit and bring with them to Delaware and hold it over the Delaware court's head and say you are not free to interpret these agreements as you see fit. You have to follow this order. And so that is the basis for why we are continuing to pursue this appeal. Coming back to the mootness doctrine, it is an equitable doctrine. And Act 3 says counsel argues I don't want to talk about the equities. They're trying to make my clients look bad. Your honors, I'm not trying to make their clients look bad. They've done that for themselves. And that is on the record. And those are findings that have been made by the Delaware court entering the TRO, entering the preliminary injunction, finding spoliation. I think the facts make clear as your honors have recognized the exigency of the circumstances that Panera really had no other choice but to take the forum that it had and all employees were due to start work on March 1st. And Panera tried to get that deadline, that start date moot. Act 3 did not want to do that. Panera had no choice. And so to the extent that the standard and in Robinson versus Pfizer that we cited in our briefs where the court states once a case pending appeal becomes moot, federal appellate courts may dispose of the case as the rest of your time. And looking at that quote, it says Panera accepts and voluntarily submits to jurisdiction and venue in this court and is not in any way challenging jurisdiction or venue in this court. And doesn't seek to waive any right to litigate in Missouri. Would that include the appeal? I don't believe so, your honor. And I'm the one that said that, and I certainly wasn't thinking of the appeal because later in that same hearing and in other submissions to the court, we submitted various letters to the Delaware court explaining exactly why we filed the appeal. In the opening brief, there is a footnote on, I believe it's footnote seven, or it might be on page seven, where we explained exactly why. And it is because of the question and the appeal is all about venue and that's all it is. Then absolutely we would have no reason to appeal, but act three continues to say that this order issued on this venue decision has substantive implications and binds the hands of the Delaware court, which the Delaware court recognized in the order that was filed in that case on the motion to dismiss. After we filed our opening brief in which the Delaware court said, there's a rightness problem. I need to wait and see what the eighth circuit does. I don't want to have inconsistent rulings here. And so that is why we respectfully state that the equities favor Panera, act three is arguing the case is moot, and we respectfully request that the court vacate the district court's decision. I see I'm out of time, but I'm glad to answer questions if your honors haven't. Thank you. Thank you, Ms. Hadley. Thank you also, Mr. Bucking. The court appreciates the argument that you've provided to the court this morning. It's been very helpful in the case. This is a fascinating case and both counsel have provided the court with help in resolving the issues presented. Thank you. Thank you, your honor. Case is submitted and counsel may be excused.